**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

In re:

**PLOURDE SAND & GRAVEL CO., INC.**

Debtor

CHAPTER 11

Case No. 23-10039-BAH

Plourde Sand & Gravel Co., Inc.,

Plaintiff,

v.

GreenLake Real Estate Fund, LLC,

Defendant.

Adv. Pro. No. ________________

**VERIFIED COMPLAINT AND OBJECTION TO CLAIM**

The debtor and debtor in possession, **Plourde Sand & Gravel Co., Inc.** (the "Debtor" and/or the "Plaintiff") respectfully complains against **GreenLake Real Estate Fund, LLC** (the "Defendant" and/or "GreenLake") and objects to Proof of Claim 13 filed by GreenLake (the "GreenLake Proof") as follows:

**VERIFICATION**

**1.** The Verification of Dawn Plourde filed in support of this Complaint is attached hereto as Exhibit A (the "Verification").

**PARTIES**

**2.** The Plaintiff is a New Hampshire corporation which has its principal place of business at 523 West River Road, Hooksett, New Hampshire and a mailing address of P.O. Box 220, Suncook, NH 03275.

**3.** GreenLake is a California limited liability company that has its principal place of business at 1416 El Centro Street, Suite 200, South Pasadena, California. According to its Website, GreenLake is a pooled real estate hedge fund. Its "Gross Asset Value" was $327,311,600 as of March 31, 2021. Its parent company is GreenLake Management LLC claims to have financed transactions up $32,600,000 through its "Team" that is so experienced that all decisions are made "in-house" without any "bank or processor." On information and belief, the lending activities of GreenLake, which is a private hedge fund, are not regulated by any governmental unit.

**4.** In the GreenLake Proof, GreenLake directed that "notices to the creditor should be sent to Anthony J. Manhart, Preti Flaherty."

**JURISDICTION AND VENUE**

**5.** The United States Bankruptcy Court for the District of New Hampshire ("this Court") has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §157 and §1334, and Rule 77.4(a) of the Local Rules of the U.S. District Court for the District of New Hampshire.

**6.** Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. §1409.

**7.** This is a "core proceeding" pursuant to 28 U.S.C. §157(b)(2)(A), (B), (C), (F), (K) and (O).

**8.** Pursuant to Administrative Order 7008-1, the Plaintiff consents to the entry of final orders and/or judgment by the Bankruptcy Court.

**BACKGROUND ALLEGATIONS RELEVANT TO MORE THAN ONE COUNT**

**9.** On or about January 30, 2023, the Plaintiff commenced this bankruptcy case by filing its Voluntary Petition Non-Individual (the "Petition Date").

**10.** The Plaintiff listed GreenLake Real Estate Fund, LLC as the holder of a contingent, unliquidated and disputed secured claim in the amount of $4,100,000 based on a loan made to Plaintiff on or about May 27, 2014.

**11.** On May 5, 2023, the Defendant, acting by and through Paul Diamond, whose title was allegedly "Authorized Signatory, filed the GreenLake Proof in which it asserted a secured claim against the Plaintiff in the amount of $10,064,472.30. *GreenLake Proof, Statement Pursuant to Bankruptcy Rule 3001(c)(2)(A).* GreenLake admits that interest rate in effect on the Petition Date was 25%. The secured claim is allegedly based on the following transactions (the "<u>GreenLake Loan</u>") according to the documents filed in support of the GreenLake Proof.

**a.** A "commercial loan in the amount of $2,850,000 made on May 27, 2014, which is within 10 years of the Petition Date, as later amended, modified, or increased, and the documents executed in connection therewith (individually, the "<u>Original GreenLake Loan</u>").

**b.** The First Amendment to the Original GreenLake Loan entered into by and among the Plaintiff, Red Hat Realty, LLC ("Red Hat") and GreenLake on or about February 5, 2016, which is within 10 years of the Petition Date(the "<u>GreenLake First Amendment Transaction</u>"). The First Amendment to Promissory Note filed by GreenLake as part of its Proof of Claim states that it advanced another $515,000 of which only $390,000 went to Plaintiff "for a total of $3,365,000. The signed version of the First Amendment to Promissory Note given to the Plaintiff and in its possession states that GreenLake advance $390,000, which brought the total to $3,240,000.00. A substantial portion of the proceeds paid fees claimed by GreenLake and other creditors that GreenLake chose to favor. Among other things, the First Amendment added Red Hat as a guarantor, required a mortgage of the real estate owned by Red Hat (which received nothing from the GreenLake First Amendment Transaction) and required the Plaintiff to make a

payment disingenuously described as a "monthly impound for real estate taxes," (the "Real Estate Tax Impound").

**c.** The Forbearance Agreement entered into by and among GreenLake and the Plaintiff, Red Hat, Loudon Village Country Store, LLC ("Country Store") on or about November 20, 2019, which is within 4 years of the Petition Date (the "GreenLake Forbearance Transaction"). The Forbearance Agreement expired by its terms on January 15, 2020 – approximately 2 months after the execution of the Agreement. The Forbearance Agreement required the Plaintiff to pay all of Lender's reasonable costs and expenses (including attorneys' fees) incurred in connection the Forbearance Transaction and continue making all of the monthly payments, including interest at the default rate and the Real Estate Tax Impound.

**d.** Second Amendment to Promissory Note Secured by Mortgage entered into by and among the Plaintiff, Red Hat, Loudon Village Country Store, Daniel Plourde and Dawn Plourde dated as of May 25, 2022 (the "GreenLake Second Amendment Transaction"). The Second Amendment recites that the real estate taxes due to the Town of Hooksett were delinquent in the amount of $104,609.07 despite the Real Estate Tax Impound. GreenLake agreed to make a protective advance but required a mortgage of the premises in which Ms. Plourde resides as security for the entire GreenLake Loan, not just the protective advance.

**12.** GreenLake swore under oath and penalties of perjury in its Proof that the Plaintiff owed it $10,064,472.30 consisting of principal in the amount of $3,614,303.66, late fees of $336,500, expenses of $164, 763.83 and accrued interest of $5,948,904.81. The Defendant filed 133 pages of documents in support of the Proof of Claim. In support of the GreenLake Proof, the Defendant attached to its Proof all of the documents executed by the Plaintiff and Oscar P.

Plourde, Daniel O. Plourde, Dawn M. Plourde and Mary Plourde (the "GreenLake Loan Documents").

**COUNT I**
**Violation of RSA 399-B**

**13.** The Plaintiff reiterates, repeats and incorporates by reference each and every allegation made the preceding and succeeding Paragraphs hereof.

**14.** RSA 399-B, Disclosure of Finance Charges (the "State Finance Charge Disclosure Statute") requires "persons engaged in the business of extending credit" to give "to each person to whom such credit is extended, concurrently with the consummation of the transaction or agreement to extend credit," the finance charge disclosures required by Section 2 of the Statute. RSA 399-B:2.

**15.** On information and belief derived from the GreenLake Loan, First and Second Amendment Transactions, the Forbearance Transaction and statements made to the Plaintiff by GreenLake, GreenLake is a "person engaged in the business of extending credit" within the meaning of RSA 399-B, Sections 1 and 2.

**16.** On information and belief derived from the GreenLake Proof, the GreenLake Loan and Forbearance Transaction were commercial transactions.

**17.** "No person shall extend credit in violation of this chapter." RSA 399-B:3.

**18.** Section 2 of the State Disclosure Statute reads as follows:

> Any person engaged in the business of extending credit shall furnish to each person to whom such credit is extended, concurrently with the consummation of the transaction or agreement to extend credit, a clear statement in writing setting forth the finance charges, expressed in dollars, rate of interest, or monthly rate of charge, or a combination thereof, to be borne by such person in connection with such extension of credit as originally scheduled.

(Emphases added).

**19.** The State Finance Charge Disclosure Statute protects commercial borrowers like the Plaintiff.

**20.** In connection with the GreenLake Loan, the Defendant did not provide the Plaintiff with a document captioned New Hampshire Finance Charge Disclosure or makes specific reference to the State Finance Charge Disclosure Statute.

**21.** The Defendant gave the Plaintiff a document captioned "Promissory Note Secured by Mortgage" (the "GreenLake Note") in connection with the GreenLake Loan. The GreenLake Note gave the Plaintiff only one (1) warning:

Notice to Borrower: This Loan calls for a Balloon Payment on Maturity.

**22.** The GreenLake Note includes a summary of the Basic Loan Terms.

**23.** The Basic Loan Terms are not a "clear statement in writing setting forth the finance charges, expressed in dollars, rate of interest, or monthly rate of charge, or a combination thereof, to be borne by such person in connection with such extension of credit as originally scheduled" for the following reasons, among others:

**a.** They do not disclose the fact that GreenLake, at its option exercisable from time to time, may choose between the interest rates described in the Basic Loan Terms for any reason or no reason.

**b.** They do not disclose that unpaid interest will be compounded.

**c.** They do not disclose the fact that the Borrower will be liable for late charges, costs, attorneys' fees and other collection costs.

**d.** They do not disclose the fact that interest will be charged and compounded on late charges, costs and attorneys' and other costs of collection.

**e.** They do not disclose the default interest rate although there is a reference to a definition of "Default Rate," which does not include the word "interest."

**f.** They do not disclose GreenLake's right to charge default interest rate retroactively to the closing date in the event of a subsequent default.

**24.** The Defendant, which dictated and drafted the terms of the GreenLake Loan Documents, failed to disclose the provisions that it claims gave rise to late fees of $336,500, expenses of $164, 763.83 and accrued interest of $5,948,904.81 despite the fact that the Plaintiff made over $2,100,000 in payments to GreenLake to date.

**25.** The failure to disclose an independent figure reflecting the cost of the GreenLake Loan violates the State Finance Charge Disclosure Statute.

**26.** The State Finance Charge Disclosure Statute confers on borrowers like the Plaintiff civil remedies for a violation of the Statute.

**27.** The GreenLake First Amendment Transaction required the Plaintiff to pay another origination fee that was disclosed to the Plaintiff as required by the State Finance Charge Disclosure Statute.

**28.** GreenLake did not disclose to the parties to the Forbearance and Second Amendment Transactions that interest would be due at the default interest rate, which had been accruing since at least December 18, 2018.

**29.** The civil remedies include the avoidance of the GreenLake Loan, the rescission of the Loan and/or an award of compensatory and enhanced damages.

**WHEREFORE**, the Plaintiff requests this Court to:

**(A)** Invalidate or void the GreenLake Loan;

**(B)** Permit the Plaintiff to rescind the GreenLake Loan, including the Original GreenLake Loan;

**(C)** Grant the Plaintiff any or all of the relief requested in any other Court or the Requested Relief Section of this Complaint to the extent available based on the facts, liability and damage proven with respect to this Count and

**(D)** Grant the Plaintiff such further relief as may prove to be fair and equitable, just or lawful under the facts proven with respect to this Count.

**COUNT II**
**The GreenLake Loan and Loan Documents Are Unconscionable**

**30.** The Plaintiff reiterates, repeats and incorporates by reference each and every allegation made the preceding and succeeding Paragraphs hereof as fully as if set forth at length herein.

**31.** "It has long been the law in this State that contracts may be declared void because unconscionable . . . oppressive, [unjust and unfair]. . . ." *Morrill v. Bank*, 90 N.H. 358, 365, 9 A.2d 519, 525 (1939); accord, *American Home Improvement Co. v. MacIver*, 105 N.H. 435, 439, 201 A.2d 886, 889 (1964). "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Id., at 4*. The existence of gross inequality of bargaining power is also a factor to be considered. *Fleischmann Distilling Corp. v. Distillers Co. Ltd.*, 395 F. Supp. 221, 232 (S.D.N.Y. 1975); *see* 1 Corbin on Contracts § 128 (1963).

**32.** In this case, the GreenLake Loan Documents are unconscionable, oppressive, unjust and unfair.

**33.** The bargaining power of GreenLake and the Plaintiff was grossly unequal. GreenLake is a real estate hedge fund with a staff of professional lenders. On information and belief, GreenLake managed hundreds of millions of dollars at the time of the Loan without the need for any bank or processor involvement. On information and belief, its parent company, GreenLake Asset Management managed even more money. GreenLake did not need to make the GreenLake Loan; the Plaintiff had no alternative. On information and belief, GreenLake knew that the Plaintiff had no alternative.

**34.** The Plaintiff did not have a meaningful choice with respect to accepting the GreenLake Loan and the oppressive and unfavorable terms of the GreenLake Loan Documents. In fact, the Plaintiff had no choice.

**35.** The terms of the GreenLake Loan Documents are oppressive with respect to the Debtor, including without limitation, those referred to or described in Count I of this Complaint.

**36.** The terms of the GreenLake Loan Documents are unreasonably favorable to GreenLake, including without limitation, those referred to or described in Count I of this Complaint.

**37.** Further, GreenLake included in the GreenLake Loan Documents many more provisions unreasonably favorable to GreenLake. Among other things, the GreenLake Loan Documents:

**a.** Required the Plaintiff and other parties to release GreenLake from liability;

**b.** Required a mortgage of Ms. Plourde's residence located at 195 Granite Street, Allenstown as security for the entire GreenLake Loan, not just the addition $105,000 advanced pursuant to the GreenLake Second Amendment Transaction.

**c.** Permitted GreenLake to require a monthly Real Estate Tax Impound that increased the monthly payment by thousands of dollars, but also permitted GreenLake to apply the escrowed funds to the payment of the GreenLake Loan, which it ultimately did, causing defaults in the payment of real estate taxes.

**d.** Permitted GreenLake to make decisions in its sole and absolute discretion.

**38.** In fact, GreenLake used the terms unreasonably favorable to GreenLake to drain the Plaintiff's cash and render it insolvent on a cash flow basis as shown by the accumulation of debt, including over $1,200,000 in liability to the Internal Revenue Service, knowing that the claims of IRS and other creditors would be inferior to its secured claim.

**39.** Under New Hampshire law, the Plaintiff has the right to avoid the unconscionable contract, rescind the contract or recover compensatory damages.

**WHEREFORE,** the Plaintiff requests this Court to:

(A) Avoid the unconscionable GreenLake Loan and GreenLake Loan Documents; or

(B) Permit the Plaintiff to rescind the unconscionable GreenLake Loan and GreenLake Loan Documents; and in either case,

(C) Grant the Plaintiff any or all of the relief requested in any other Court or the Requested Relief Section of this Complaint to the extent available based on the facts, liability and damage proven with respect to this Count and

(**C**) Grant the Plaintiff such further relief as may be fair and equitable, just or lawful under the facts proven with respect to this Count**.**

## COUNT III
## The Late Charges, Interest and Attorneys' Fees Constitute an Unenforceable Penalty

**40.** The Plaintiff reiterates, repeats and incorporates by reference each and every allegation made the preceding and succeeding Paragraphs hereof as fully as if set forth at length herein.

**41.** Where a “default interest rate provisions function as a penalty rather than liquidated damages,” a bankruptcy court in this Circuit may not enforce the default interest rate.” In this Circuit, a bankruptcy court must determine under New Hampshire law “whether the interest and default interest rates” reserve in loan documents constitutes allowable liquidated damages or an unenforceable penalty. *See, e.g. Prudential Ins. Co. of America v. SW Boston Hotel Venture, LLC,* 748 F.3d 393 (1st Cir. 2014).

**42.** Attached as Exhibit B is a table, which shows the Prime Rate in effect over the term of the GreenLake Loan and compares the option of base or pre-default interest at the rates of 12% and Prime, plus 6% to the default interest rate of 25%. On average, the default interest rate exceeded the higher of the pre-default rates by 12.57 % on average.

**43.** Adding the late fees charged by GreenLake for which there is no apparent “pecuniary loss” justification simply increases the penalty.

**44.** Adding the undocumented and unjustified attorneys’ fees further increases the penalty.

**45.** GreenLake must justify the substantial, additional margin because it is not tethered to preserving the benefit of the bargain for a number of reasons.

**46.** The base interest rate option already includes a substantial risk premium. The GreenLake Loan Documents permit GreenLake to select the higher of 12% or Prime plus 6%. The “Till Rate” is Prime, plus a risk factor that generally ranges from 1% to 3%.

**47.** The GreenLake Loan Documents require the Plaintiff to pay late charges, costs and attorneys' fees and other costs of collection, which should compensate GreenLake for increased internal administrative costs incurred as the result of a default. *See GreenLake Proof, Itemization of Claim.*

**48.** There is no economic justification for a default interest rate that was more than twice the 12% or Prime, plus 6% interest rate options.

**49.** Liquidated damage provisions are not enforceable under New Hampshire law unless they meet the conditions imposed by the New Hampshire Supreme Court in H*olloway Auto. Grp. v. Lucic,* 163 N.H. 6, 35 A.3d 577 (2011).

> Three criteria distinguish a valid liquidated damages clause from an unenforceable penalty. In a valid clause: (1) the damages anticipated as a result of the breach are uncertain in amount or difficult to prove; (2) the parties intended to liquidate damages in advance; and (3) the amount agreed upon is reasonable and not greatly disproportionate to the presumable loss or injury. *Orr v. Goodwin*, 157 N.H. 511, 514, 953 A.2d 1190 (2008). Here, the parties agree that the liquidated damages provision meets the first two criteria; thus, we limit our analysis to the third criterion — the reasonableness of the agreed amount.
>
> We employ a two-part test to determine whether a liquidated sum is reasonable. First, we assess whether the amount "was a reasonable *estimate* of difficult-to-ascertain damages at the time the parties agreed to it." *Shallow Brook Assoc's v. Dube*, 135 N.H. 40, 48, 599 A.2d 132 (1991) (quotation omitted). Next, we ask whether actual damages are "easily ascertainable" after a breach. *See id*. at 49 (quotation omitted). "[I]f the actual damages turn out to be easily ascertainable, we must then consider whether the stipulated sum is unreasonable and grossly disproportionate to the actual damages from a breach." *Orr*, 157 N.H. at 515. If the stipulated sum is grossly disproportionate to easily ascertainable, actual damages, the provision is an unenforceable penalty, and the aggrieved party will be awarded no more than the actual damages. *Id*.

*Holloway Auto. Grp. v. Lucic*, 163 N.H. 6, 9 (2011). In this case, there is no liquidated damages provision that addresses the *Holloway* issues or offer any explanation or justification for the 25% default interest rate.

**50.** There is no statement in the GreenLake Loan Documents or any other document known to the Plaintiff that the damages anticipated as a result of the breach are uncertain in amount or difficult to prove; (2) the parties intended to liquidate damages in advance; and (3) the amount agreed upon is reasonable and not greatly disproportionate to the presumable loss or injury as required by *Orr v. Goodwin*, 157 N.H. 511, 514, 953 A.2d 1190 (2008).

**51.** The first question is "was the default interest rate "a reasonable *estimate* of difficult-to-ascertain damages at the time the parties agreed to it." *Shallow Brook Assoc's v. Dube*, 135 N.H. 40, 48, 599 A.2d 132 (1991).

**52.** New Hampshire employs "a two-part test to determine whether a liquidated sum is reasonable. "[W]as a reasonable *estimate* of difficult-to-ascertain damages at the time the parties agreed to it." *Shallow Brook Assoc's v. Dube*, 135 N.H. 40, 48, 599 A.2d 132 (1991) (quotation omitted). The damages in the event of default were not difficult to ascertain when the parties entered into the GreenLake Loan Documents or at any time thereafter. GreenLake had appraisals of the collateral. Given the expertise of GreenLake, the amount of damage that GreenLake might sustain in the event of a default were not difficult to ascertain, particularly given that fact that costs, attorneys' fees and other costs of collection were separately recoverable in addition to the default interest rate.

**53.** The second question is whether actual damages are "easily ascertainable" after a breach. *See id*. at 49 (quotation omitted). "[I]f the actual damages turn out to be easily ascertainable, we must then consider whether the stipulated sum is unreasonable and grossly disproportionate to the actual damages from a breach." *Orr*, 157 N.H. at 515. The post-default damages are easily ascertainable in this case. If the stipulated sum is grossly disproportionate to easily ascertainable, actual damages, the provision is an unenforceable penalty, and the aggrieved party will be awarded no more than the actual damages. *Id*.

**54.** The Plaintiff paid GreenLake over $2,100,000 on account of the GreenLake Loan. GreenLake swore under oath and penalties of perjury in its Proof that the Plaintiff owed it

$10,064,472.30 consisting of principal in the amount of $3,614,303.66, late fees of $336,500, expenses of $164,763.83 and accrued interest of $5,948,904.81. The late fees, attorneys' fees and $5,948,904.81 in default rate interest far exceed the easily ascertainable actual damages from a breach. On information and belief, GreenLake suffered no pecuniary loss as a result of the Plaintiff's default other than attorneys' fees and costs of collection for which it has provided no documentation.

**55.** Under the circumstances, the provisions permitting the Defendant to recover late charges, costs, attorneys' fees and other costs of collection are unenforceable penalties for which there is no pecuniary loss justification.

**WHREFORE,** the Plaintiff requests this Court to:

**(A)** Disallow the default rate interest as an unenforceable penalty and attorneys' fees and other costs included in the GreenLake Proof to the extent determined to be unreasonable.

**(B)** Recalculate the GreenLake Claim after the disallowance of the default rate interest and unreasonable late fees, attorneys' fees and other costs

**(C)** Grant the Plaintiff any or all of the relief requested in any other Court or the Requested Relief Section of this Complaint to the extent available based on the facts, liability and damage proven with respect to this Count and

**(D)** Grant the Plaintiff such further relief as may prove to be fair and equitable, just or lawful under the facts proven with respect to this Count.

**COUNT IV**
**Violation of Consumer Protection Act**

**56.** The Plaintiff reiterates, repeats and incorporates by reference each and every allegation made the preceding and succeeding Paragraphs hereof as fully as if set forth at length herein.

**57.** The New Hampshire Consumer Protection Act, RSA 358-A (the "NHCPA") is a remedial statute, which must be construed broadly to effectuate its purposes, which is to prevent and provide remedies for unfair and deceptive business acts and practices.

**58.** The NHCPA creates a private cause of action that permits the Defendant to recover any ascertainable loss of money or property as the result of the use or employment of a method, act or practice prohibited by the statute, multiple statutory damages and attorneys' fees, costs and expenses.

**59.** The Defendant is a "person" as that term is defined in RSA 358-A:1(I).

**60.** On information and belief, the GreenLake Loan and GreenLake Forbearance Transaction are not exempt transactions under Section 3 of the NHCPA.

**61.** GreenLake engaged in unfair or deceptive acts and/or practices in the conduct of a trade or business within the State of New Hampshire, all as defined in RSA 358-A:2, including those alleged in the preceding and succeeding paragraphs hereof.

**62.** An act or practice violates the UTP Act if (a) it offends public policy as established by statutes, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common-law statutory or other established concept of unfairness; (b) it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers or competitors or other businessmen.

**63.** Among other things, the Defendant preyed on the Plaintiff's weakness and grossly unequal bargaining power to force or knowingly permit the Plaintiff to enter into the GreenLake Loan Documents that contain contract terms which are unreasonably favorable to the other party knowing or having every reason to believe that the Plaintiff had no meaningful choice.

**64.** The provisions of the GreenLake Loan Documents are so favorable to GreenLake that the Plaintiff, which borrowed $3,365,000, now owes GreenLake over $10,000,000 according to the GreenLake Proof despite having paid over $2,100,000. Of the amount due, $5,948,904.81 is allegedly attributable to accrued interest alone with another $336,500 and $164,763.83 attributable to late fees and expenses, respectively.

**65.** On information and belief, the Defendant (a) knew that the Plaintiff would not be able to repay the Original GreenLake Loan at the rates of interest reserved by Green Lake shortly after the First Amendment to the Loan, (b) the Defendant knew that the Plaintiff had substantial cash flow that GreenLake could take for itself as it did even though it meant incurring debt to the IRS and other creditors, (c) the Defendant took and continued to take substantially of the Plaintiff's revenue.

**66.** The Defendant bled the Plaintiff's cash by requiring the Debtor to pay a Real Estate Tax Impound of tens of thousands of dollars each month, but then applied the money to its own debt, which left the Plaintiff with the liability and GreenLake with the cash and the basis to declare a default that it created.

**67.** The Defendant never disclosed its true plan to the Plaintiff.

**68.** The Defendant committed the unfair business practices and deceptive acts complained of herein willfully and intentionally and within the State of New Hampshire and damaged the Plaintiff substantially and would damage other citizens of the State of New Hampshire.

**69.** GreenLake never provided the Plaintiff with conventional monthly statements itemizing the amounts due or providing an explanation of the application of payments or documentation supporting the charges asserted in the GreenLake Proof.

**70.** On information and belief, while claiming to be a lender trying to help the Plaintiff, GreenLake let the Plaintiff operate as long as it could for its own benefit knowing that it was deepening the Plaintiff's insolvency and damaging unsecured creditors and then liquidate the Plaintiff's assets for its own benefit and carried out its plan.

**71.** Taken as a whole, the conduct of the Defendant offends public policy, violates the penumbra of common law, statutory, and other established concepts of deception and unfairness and engaged in immoral, unethical, oppressive, or unscrupulous conduct by representing and implying one thing and doing another in flagrant disregard of representations made and bargains struck and caused a substantial injury to the Defendant in violation of public policy.

**72.** As a result of the unlawful and deceptive conduct of the Defendant complained of herein, the Defendant is liable to the Plaintiff under the NHCPA.

**WHREFORE,** the Plaintiff requests this Court to:

**(A)** Enter a judgment in favor of the Plaintiff in an amount equal to three times the amount of the damage or loss caused the Plaintiff by the Defendants' violation of the NHCPA, plus interest at the statutory rate, reasonable attorneys' fees and costs and other recoverable costs and expenses.

**(B)** Grant the Plaintiff any or all of the relief requested in any other Court or the Requested Relief Section of this Complaint to the extent available based on the facts, liability and damage proven with respect to this Count and

**(C)** Grant the Plaintiff such further relief as may prove to be fair and equitable, just or lawful under the facts proven with respect to this Count.

**COUNT V**
**Avoidance of Preferential Transfers**

**Pursuant to Bankruptcy Code Section 547**

**73.** The Plaintiff re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs of this Complaint as fully as if set forth at length in this Count.

**74.** The Plaintiff is a trustee within the meaning of Sections 1107 of the Bankruptcy Code.

**75.** Pursuant to Bankruptcy Code Section 547, the Plaintiff has standing to recover preferential transfers made to GreenLake for the benefit of the estate.

**76.** On information and belief, GreenLake was an insider with respect to the Plaintiff. It held liens of record on substantially all of the Plaintiff's property and the home in which Dawn Plourde lives and raised her family. GreenLake knew how much the home meant to Ms. Plourde emotionally, which on information is the reason it required her to mortgage the home as security for the total GreenLake Claim when it lent the Plaintiff approximately $105,000 to pay real estate taxes to protect its lien. On information and belief, GreenLake used the threat of foreclosure to exercise dominion and control over the Plaintiff and force the Plaintiff to dedicate its cash flow to GreenLake to the detriment of the Plaintiff and other creditors and parties in interest.

**77.** The ninetieth (90th) day preceding the Petition Date is October 30, 2022.

**78.** During the 90-day period preceding the Petition Date, the Plaintiff made $65,000.00 in payments to GreenLake.

**79.** During the 12-month period preceding the Petition Date preceding the Petition Date, the Plaintiff made $190,000.00 in payments to GreenLake.

**80.** Each of the transfers identified in the preceding paragraphs (the "Preferential Transfers") constituted a transfer of property in which the Plaintiff had an interest within the meaning of Code Section 547.

**81.** Each of the Preferential Transfers was made to GreenLake by the Plaintiff to the benefit of GreenLake.

**82.** Each of the Preferential Transfers was made for or on account of the GreenLake Loan, which is avoidable in whole or in part, based on the allegations made in the preceding Counts of this Complaint or the unsecured portion of the GreenLake Loan – an antecedent debt.

**83.** Each of the Preferential Transfers to GreenLake was made within relevant avoidance period.

**84.** The Plaintiff is presumed to have been insolvent on and during the ninety (90) days preceding the Petition Date.

**85.** On information and belief, the Plaintiff was insolvent on the first day of the 12-moth avoidance period.

**86.** On information and belief, the Plaintiff was in fact insolvent on a balance sheet and cash flow basis during those periods.

**87.** Each of the Preferential Transfers enabled GreenLake to receive more than GreenLake would have received on account of GreenLake's Claim if (a) the case was a liquidation case under chapter 7; (b) the Preferential Transfer had not been made; and (c) GreenLake had been paid as provided in Title 11.

**WHEREFORE,** the Plaintiff respectfully requests that this Court to enter a judgment against GreenLake, which among other things:

**(A)** Avoids each of the Preferential Transfers;

**(B)** Orders GreenLake to disgorge and pay to the Plaintiff an amount equal to the sum of the Preferential Transfers during the longer of the 12-month or 90-day avoidance periods pursuant to 11 U.S.C. §§547 and 550;

**(C)** Avoids or transfers the lien asserted by GreenLake to the Plaintiff to the extent of the avoided Preferential Transfers;

**(D)** Preserves each avoided Preferential Transfer for the benefit of the estate; and

**(E)** Grants the Plaintiff such additional relief as may be requested in any other Count hereof to the extent available based on the allegations made in this Count and such further relief as may be just and equitable under the facts established at trial.

**COUNT VI**
**Disallowance of Claims Pursuant to Code Section 502(D)**

**88.** The Plaintiff re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs of this Complaint as fully as if set forth at length in this Count.

**89.** GreenLake is the transferee of all of the avoidable obligations and transfers complained of herein, each of which is avoidable under the Code and UFTA  and recoverable from CCLC.

**90.** Pursuant to 11 U.S.C. §502(d), any and all claims held by GreenLake against the Plaintiff and its estate must be disallowed unless and until GreenLake pays the amount of thereof, plus interest, to the Plaintiff.

**WHEREFORE,** the Plaintiff respectfully requests that this Court to:

**(A)** Enter a judgment against GreenLake and in its favor that disallows any and all claims held by GreenLake against the Plaintiff and/or its estate unless and until GreenLake pays the amount of the Transfer or Transfers, plus interest, to the Plaintiff;

**(B)** Grants the Plaintiff such additional relief as may be requested in any other Count hereof to the extent available based on the allegations made in this Count; and

**(C)** Grants the Plaintiff such further relief as may be just and equitable under the facts established at trial.

**OBJECTION TO DISPUTED GREENLAKE PROOF**

**91.** The Plaintiff re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs of this Complaint as fully as if set forth at length in this Count.

**92.** GreenLake has never provided the Debtor with monthly statements and refused to provide monthly statements or an accounting for the application of the money paid by the Debtor.

**93.** The records kept by the Debtor as best it could under the circumstances suggest that the Debtor owes GreenLake approximately $4,300,000.

**94.** Further, the Debtor incorporates the allegations and claims made against GreenLake in the liability Counts asserted herein.

**WHEREFORE,** the Plaintiff respectfully requests that this Court to enter a judgment against GreenLake, which among other things:

**(A)** Determine the amount due GreenLake;

**(B)** Disallow the Green Lake Proof to the extent it exceeds the amount determined to be due GreenLake; and

**(C)** Grants the Plaintiff such additional relief as may be requested in any other Count hereof to the extent available based on the allegations made in this Count; and

**(D)** Grants the Plaintiff such further relief as may be just and equitable under the facts established at trial.

**RESERVATION OF RIGHTS**

**95.** The Plaintiff reserves the right to bring all other claims or causes of action that the Plaintiff has or may have against any Defendant, whether at law or in equity, arising from, out of or incidental to the circumstances and events alleged herein and those discovered or found through or during the discovery process.

**REQUESTED RELIEF**

**WHEREFORE,** the Plaintiff requests this Court to:

**(A)** Grant the Plaintiff the relief requested in any other Court or the Requested Relief Section of this Complaint to the extent available based on the facts, liability and damage proven with respect to this Count; and

**(B)** Grant the Plaintiff such further relief as may be fair and equitable, just or lawful under the facts proven at trial.

Respectfully submitted,

DATED: August 2, 2023

/s/ William S. Gannon
William S. Gannon, BNH 01222 (NH)

Counsel for

**PLOURDE SAND & GRAVEL CO., INC.**

WILLIAM S. GANNON PLLC
740 Chestnut Street
Manchester, NH 03104
PH: 603-621-0833
FX: 603-621-0830
bgannon@gannonlawfirm.com